IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| MAUREEN DAUGHERTY-ROSENBAUM, ) | | |
| ) | | |
| Plaintiff, ) | | Civil Case No. 06-800-KI |
| ) | | |
| vs. ) | | OPINION AND ORDER |
| ) | | |
| LIFE INSURANCE COMPANY OF NORTH ) | | |
| AMERICA; AT&T BROADBAND AND ) | | |
| INTERNET SERVICES GROUP SHORT TERM ) | | |
| AND LONG TERM DISABILITY PLAN, ) | | |
| ) | | |
| Defendants. ) | | |

John F. Neupert
Alyssa E. Tormala
Miller Nash LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204-3699

    Attorneys for Plaintiff

Page 1 - OPINION AND ORDER

Katherine S. Somervell
Blake V. Robinson
Bullivant Houser Bailey PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204-2089

    Attorneys for Defendants

KING, Judge:

Plaintiff Maureen Daugherty-Rosenbaum seeks to recover disability benefits from defendants Life Insurance Company of North America and the AT&T Broadband and Internet Services Group Short Term and Long Term Disability Plan. Before the court is plaintiff's Motion for Summary Judgment (#12) and defendants' Cross-Motion for Summary Judgment (#20). For the following reasons, I grant the plaintiff's motion and deny the defendants' motion.

## FACTUAL BACKGROUND

Plaintiff was diagnosed with interstitial cystitis ("IC") on October 24, 1995, after she had a procedure called cystoscopy with hydrodistention. IC is a chronic inflammatory condition of the bladder in which the bladder develops multiple "pinpoint" hemorrhages. Patients with IC experience urgency and frequency in urination, as well as pain in the abdominal area. Plaintiff had a second cystoscopy on December 29, 1998, which confirmed the diagnosis of IC.

Plaintiff was employed by AT&T Broadband and Internet Services ("AT&T") and a beneficiary under the AT&T Group Short Term and Long Term Disability Plan (the "Plan"). On or about May 17, 2000, plaintiff became unable to perform the duties of her occupation due to her symptoms of IC. She applied for disability benefits under the Plan. The Plan defines a disability as follows:

Page 2 - OPINION AND ORDER

The Employee is considered Disabled if, solely because of injury or Sickness, he or she is either:

1. unable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative; or

2. unable to earn 80% or more of his or her Indexed Covered Earnings.

After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is either:

1. unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training, or experience; or

2. unable to earn 80% or more of his or her Indexed Covered Earnings.

Ex. 2 to Stipulation Regarding Claim File and Ins. Policy ("Stip."), at 15.

On October 14, 2000, the Life Insurance Company of America ("LINA") determined that plaintiff was disabled as defined by the Plan and accepted plaintiff's claim that she was unable to perform the duties of her position as a Community Affairs Coordinator.

On October 11, 2002, LINA continued benefits on the basis that plaintiff was totally disabled from performing any occupation for which she was qualified at that time. LINA informed plaintiff that it would "periodically request proof of your continued disability from any occupation from you and your attending physician." Ex. 1 to Stip., at 428. Plaintiff has been receiving social security benefits since February 2002.

After requesting medical information from plaintiff, and contacting Dr. Michael J. Kaempf, plaintiff's urologist, LINA retained urologist Dr. Marcel I. Horowitz to conduct an independent review of plaintiff's file. Dr. Horowitz reported that Dr. Kaempf was reluctant to

Page 3 - OPINION AND ORDER

discuss plaintiff's case, and that he "did not provide" any "physical findings or severity of symptoms" plaintiff was suffering. Ex. 1 to Stip., at 213. Also, Dr. Kaempf "stated that [plaintiff's] complaints were in excess of those usually seen by patients with interstitial cystitis." Id.

From January 2004 through May 2005, plaintiff complained to Dr. Stuart M. Rosenblum, her pain specialist, of high pain levels, even with medication, frequent urination (every 10 to 15 minutes), urgency, and side effects from medications including fatigue, constipation, drowsiness, depression and irritability. She also reported that these symptoms completely interfered with many of her activities such as mood, walking, work, relationships, sexual activity, and sleep.

On July 19, 2005, LINA terminated plaintiff's benefits, stating, "Based on our review of all the updated information, the medical documentation does not continue to support your ongoing disability, nor are there restrictions and limitations which would preclude you from working in a sedentary occupation." Ex. 1 to Stip., at 221.

By letter dated January 13, 2006, plaintiff appealed the denial of her benefits and provided evidence supporting her claim. On March 14 and 23, 2006, plaintiff submitted additional recent medical records in support of her claim. The evidence plaintiff provided with her appeal included letters and statements from Dr. Kaempf and Dr. Rosenblum. Dr. Kaempf wrote, in relevant part:

> Ms. Daugherty-Rosenbaum has undergone a thorough and complete evaluation and was diagnosed with interstitial cystitis many years ago.
>
> . . .
>
> I have reviewed her old medical records, and concur with the diagnosis of interstitial cystitis that was initially made elsewhere.

Page 4 - OPINION AND ORDER

> She continues to have significant bladder irritative symptoms consistent with severe and ongoing interstitial cystitis.
>
> While I have not repeated the systourethroscopy or bladder biopsies, I see no reason to repeat these at this time to confirm the diagnosis of interstitial cystitis.
>
> I have been led to believe by the responses of the insurance company that they do not feel that currently she has any symptoms or evidence of interstitial cystitis to account for her symptoms and disability.
>
> I believe that this is a malicious misinterpretation of the facts.
>
> I have provided records from my office, and I believe you have extensive other documentation confirming her diagnosis and continued severe symptoms.

Ex. 1 to Stip., at 100.

Dr. Rosenblum wrote, in relevant part, "The most recent appointment between this patient and myself, was May 26, 2005 for which I saw her for follow up and medication management. At this visit it was very obvious as to the amount of pain she suffers from and the interference this causes in her life. She had to leave the room several times to urinate in a 30 minute time span." Ex. 1 to Stip., at 103.

On March 27, 2006, LINA denied plaintiff's appeal, stating in part, "Our Medical Director stated that there is not sufficient documentation in the file to establish the severity of condition exists or clinically measurable evidence exists to support limitations and restrictions given by Ms. Daugherty-Rosenbaum's physician." Ex. 1 to Stip., at 11.

## LEGAL STANDARDS

ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits. <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 113 (1989) (internal quotation and citation omitted). When a denial

Page 5 - OPINION AND ORDER

of benefits is challenged under ERISA's 29 U.S.C. § 1132(a)(1)(B), the court's review of the administrator's decision is de novo unless the plan unambiguously confers discretion on the administrator to determine eligibility for benefits or to construe the terms of the plan. Both parties agree that the court's review should be de novo because the Plan does not confer discretion on the administrator.

Accordingly, the court must determine, based on review of the administrative record, whether plaintiff has met her burden that she is "unable to perform all the material duties of any occupation for which . . . she is, or may reasonably become, qualified based on education, training, or experience." Ex. 2 to Stip, at 15.

## DISCUSSION

After awarding plaintiff short-term and then long-term disability benefits, LINA terminated plaintiff's disability benefits. Plaintiff argues that nothing changed from LINA's initial disability determination to the date LINA terminated benefits–plaintiff was diagnosed with IC, the disease is incurable, and nothing in the record shows that plaintiff's symptoms have changed. LINA argues that plaintiff failed to show both that objective evidence supports her continued diagnosis for IC–the seven-year old diagnostic test was too old–and that she was functionally limited by the IC.

I.   <u>Diagnosis of IC</u>

Plaintiff first argues that the Plan does not require plaintiff to provide "objective," "physical," or "diagnostic findings." Plaintiff points out that she has already been diagnosed with IC twice, and the test she underwent is the only reliable diagnostic test for IC. Dr. Kaempf stated in May of 2005 that another cystoscopy was not necessary, and that he agreed with the

diagnosis. Plaintiff also argues that it was inappropriate for LINA to demand objective findings since her symptoms of IC, such as pain, are subjective. Dr. Kaempf reported that plaintiff suffers from pain, urgency and frequency, and she has tried many treatments without success. Plaintiff relies on Stith v. Prudential Ins. Co. of America, 356 F. Supp. 2d 431 (D. N.J. 2005), in which the court dealt with a claimant who suffered from IC. The court reversed the denial of benefits, finding the administrator's denial to be arbitrary and capricious, because the evidence demonstrated plaintiff suffered from chronic pain.

LINA responds that courts permit administrators to demand objective findings when the diagnosis is the kind that can be objectively verified. See Wilkins v. Baptist Healthcare, 150 F.3d 609, 614 (6th Cir. 1998) (requiring evidence of torn rotator cuff). Here, IC is such a diagnosis. Plaintiff relies on a seven-year old diagnosis to support her claim. The cystoscopy was conducted in 1998, and in addition her doctor relied on hematuria (blood in her urine) and petechial hemorrhages to diagnose her with IC. In contrast, according to LINA, Dr. Kaempf stated that there were "no positive clinical exam findings to support the diagnosis of IC"[1] during his visits with her in May and September of 2004. LINA states that plaintiff failed to submit recent evidence that would allow for an IC diagnosis at the time plaintiff's claim was terminated.

It is undisputed that plaintiff has been diagnosed with IC, and there is no cure for IC. No doctor ever suggested that an additional cystoscopy procedure was needed to confirm the diagnosis. Dr. Kaempf twice stated that another cystoscopy was not necessary. Ex. 1 to Stip., at

---

[1] I note, though, that after receiving a summary of the telephone conversation in which he made this remark, Dr. Kaempf wrote, "This implies/infers she doesn't have IC; no specific exam was done so a negative implies nothing." Ex. 1 to Stip., at 266.

Page 7 - OPINION AND ORDER

100, 178. LINA's expert, Dr. Horowitz, and LINA's Medical Director never contested the diagnosis.

In sum, the record shows that plaintiff has been diagnosed with IC and that both LINA's expert and its Medical Director accepted this diagnosis. I have no reason to accept LINA's argument now that plaintiff needed to objectively verify her diagnosis yet again.

II.     Evidence of Functional Limitations

LINA argues that even if plaintiff has IC, she cannot show that her symptoms result in restrictions or limitations that prevent her from performing a sedentary job. LINA points to a Ninth Circuit case in which the court stated that a diagnosis alone is insufficient to establish disability. Jordan v. Northrop Grumman Corp., 370 F.3d 869, 880 (9th Cir. 2004). LINA asserts that it did not base its termination of her benefits on the fact that she could not offer objective proof of her subjective symptoms, but that it needed objective evidence that her IC limits her from performing a sedentary occupation. LINA also points to a Disability Questionnaire in which plaintiff indicated she could use her computer to check e-mail daily, cook meals three to four times a week, undertake chores at home, do volunteer work, and go out on her husband's boat.

Plaintiff argues that LINA's distinction between the need for objective proof of subjective symptoms (which LINA claims it did not demand) and the need for objective evidence of restrictions (which LINA asserts it did demand) is one without a difference. According to plaintiff, it *is* her subjective symptoms which impede her ability to work–pain and the urgent and frequent need to urinate. Plaintiff points out that her frequent and urgent need to urinate is

supported by Dr. Rosenblum's notation that plaintiff had to leave the room several times to urinate during a 30-minute appointment.

Furthermore, plaintiff notes that LINA previously approved plaintiff's claim for disability, and nothing has changed. Both Drs. Kaempf and Rosenblum confirmed the diagnosis and plaintiff's level of pain and urgency. Plaintiff's level of activity, including the amount of exercise she gets, has not changed since LINA continued her disability status in October 2002.

LINA responds that plaintiff's responses on the Disability Questionnaire demonstrate that plaintiff is quite active. None of plaintiff's physicians opined that plaintiff was functionally limited in any way by the IC. If LINA approved the claim, it would have violated its duties as a claim administrator under ERISA to carefully husband the assets of the plan.

Plaintiff replies that her condition has not improved since 2002. The Disability Questionnaire she completed in January of 2006 does not show that her condition has improved, and contains substantially the same information as the one she completed in 2002. She limits her cooking to 20 minutes, her cleaning to 15 to 20 minutes, and laundry to 10 minutes. Her volunteer work is at home, where she can be near the bathroom and work at her own pace. Plaintiff stated she does not enjoy her husband's boat because of her frequent need to use the restroom, and her use of the treadmill at the gym is limited by her need to use the restroom. In addition, an assessment by Dr. Douglas Renouard, which indicated plaintiff could frequently (between 34 and 66 percent of an eight-hour workday) sit between 2.5 and 5.5 hours, was in the claims file in 2002 when approval of plaintiff's claim was continued.

After reviewing the record, and defendants' arguments, I do not see any improvement in plaintiff's condition warranting termination of benefits. The Disability Questionnaire, while

Page 9 - OPINION AND ORDER

showing plaintiff as a relatively active person, is substantially the same as the one she completed in 2002. Dr. Renouard's functional capacity assessment was in the claims file when plaintiff's claim was continued in October of 2002. Dr. Rosenblum commented that plaintiff "had to leave the room several times to urinate in a 30 minute time span" and that she is "unable to walk for any extended period of time" and therefore it "would be virtually impossible for her to obtain employment."[2] Ex. 1 to Stip., at 103. In contrast, neither Dr. Horowitz nor the Medical Director pointed to any evidence that plaintiff's symptoms and functionality had improved. Accordingly, plaintiff has met her burden that she is "unable to perform all the material duties of any occupation for which . . . she is, or may reasonably become, qualified based on education, training, or experience." Stip. to Ex. 2, at 15.

## CONCLUSION

Based on the foregoing, I grant plaintiff's Motion for Summary Judgment (#12), and deny defendants' Cross-Motion for Summary Judgment (#20).

IT IS SO ORDERED.

Dated this    24th    day of January, 2007.

    /s/ Garr M. King
Garr M. King
United States District Judge

---

[2]Although defendants take issue with Dr. Rosenblum's use of the word "obtain" as opposed to "perform," there is no indication Dr. Rosenblum intended the distinction defendants take from his statement.

Page 10 - OPINION AND ORDER